IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| TODD DAMASE OUELLETTE ) | | CV 10-133-M-DWM-JCL |
| ) | | |
| Petitioner, ) | | |
| v. ) | | ORDER |
| ) | | |
| VIACOM INTERNATIONAL, INC. ) | | |
| ) | | |
| Respondents. ) | | |
| _____) | | |

Before the Court is Defendant Viacom International's motion for judgment on the pleadings. Magistrate Judge Lynch recommends granting the motion and dismissing Plaintiff Todd Damase Ouellette's complaint with prejudice. The Court agrees and adopts Judge Lynch's Findings and Recommendation in full.

## BACKGROUND

Ouellette, proceeding pro se, is suing Viacom for violations of 17 U.S.C. § 512(f) of the Digital Millennium Copyright Act. Ouellette alleges that Viacom misrepresented to Youtube.com that Ouellette's uploaded videos infringed on its copyrights and that those misrepresentations led Youtube.com to wrongfully remove Ouellette's videos and the termination of at least one of Ouellette's Youtube.com accounts. Viacom argues that, even taking Ouellette's allegations as

1

true, Ouellette has failed to plead a viable misrepresentation claim under § 512(f). Viacom's motion was referred to United States Magistrate Judge Lynch under 28 U.S.C. § 636(b). Judge Lynch agreed with Viacom and recommends that judgment be granted in Viacom's favor and that Ouellette's amended complaint be dismissed with prejudice.

Ouellette timely objected to Judge Lynch's Findings and Recommendation. Ouellette is, therefore, entitled to de novo review of the specified findings and recommendations to which he objects. 28 U.S.C. § 636(b)(1). The portions of the Findings and Recommendation not specifically objected to are reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach. Inc.*, 656 F.3d 1309, 1313 (9th Cir. 1981).

## ANALYSIS

Judge Lynch concluded that Ouellette's pleadings, taken as true, fail to state a claim under 17 U.S.C. § 512(f) in three ways. First, Ouellette failed to plead sufficient facts to establish that Viacom knew that Ouellette's videos were not infringing on its copyrights—for instance, while Ouellette admitted that the videos in question were portions of copyrighted Viacom programs, he failed to plead facts demonstrating Viacom knew that it was not copyright infringement for Ouellette to post those videos on Youtube.com. Second, Ouellette failed to plead

facts supporting his assertion that Viacom admitted that his videos were "fair use" of its copyrighted material. Third, Ouellette failed to plead facts supporting his assertion that Viacom knew that its scanning software was improperly flagging Ouellette's protected, "fair use" videos as infringing on its copyrights. Based on these inadequacies and Ouellette's failure to meet the § 512(f) standard articulated in a previous order, Judge Lynch recommends dismissing Ouellette's complaint with prejudice.

I.   **The Digital Millennium Copyright Act and its "takedown" provision**

The rapid growth of internet use during the 1990s was a double-edged sword for copyright law. For copyright owners, the internet was a means to promote their work, but it was also a means of pirating their work on a massive scale. *See e.g. A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001) (discussing program that allowed users to download vast amounts of copyrighted musical compositions). For entities that provided consumer access to the internet (service providers), the internet was not only a profitable frontier, but it was a frontier fraught with unknown copyright liability. Applying traditional copyright law, for instance, service providers could be liable for contributing to copyright infringement by receiving compensation from users that used the internet to infringe copyrighted works. *Cf.* S. Rep. 105–190, at 8 (1998) (Senate

Committee on the Judiciary Report discussing that "service providers may hesitate" to continue in "the ordinary course of their operations" without limiting "potential copyright infringement liability").  The scope of copyright liability for service providers was among the "[d]ifficult and controversial questions of copyright liability in the online world" that led Congress to pass the Digital Millennium Copyright Act.  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing the Digital Millennium Copyright Act, Pub. L. No. 105–304, 112 Stat. 2860 (1998)).

The Digital Millennium Copyright Act, 17 U.S.C. § 512, sets out the responsibilities of copyright owners (e.g., Viacom), internet users (e.g., Ouellette), and service providers[1] (e.g., Youtube.com).  The Act's "takedown" scheme, 17 U.S.C. § 512(c)(1)(C) and (c)(3), strikes a balance that protects the interests of both copyright owners and service providers.  Judge Lynch succinctly articulated the "takedown" process:

> If a copyright owner finds activity on the internet it believes constitutes an infringement of its rights, the owner may serve a notice of the claimed infringement on the hosting internet service provider, which, in

---

[1] "Service provider" is broadly defined by DMCA as "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.  17 U.S.C. § (k)(1)(A).

> substance, requires the provider to take the material down from the internet. *See* 17 U.S.C. § 512(c)(1)(C) and (c)(3).

(Doc. 60 at 5.) Essentially, the Act requires copyright owners, as opposed to service providers, to police their copyrights on the internet. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) (noting that the Act places the "burden of policing copyright infringement . . . squarely on the owners of the copyright.").

To protect internet users from over-protective copyright enforcement by copyright owners, the Act requires a copyright owner's "takedown" notice to include a statement, made under the penalty of perjury, that it "has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A)(v); *see also Perfect 10, Inc.*, 488 F.3d at 1113.

In formulating a good-faith belief that another's use of the copyrighted material is not authorized by "law," the copyright owner must consider the "fair use doctrine" under 17 U.S.C. § 107. *Lenz v. Universal Music Corp.*, 571 F. Supp. 2d 1150, 1154–1155 (N.D. Cal. Aug. 20, 2008) (reasoning that a copyright owner acts in bad faith in issuing a takedown notice without "proper consideration of the fair use doctrine"). The fair use doctrine recognizes that not every use of

5

copyrighted materials is copyright infringement—for instance, using a short segment of a copyrighted video for educational purposes. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("Anyone . . . that makes fair use of the work is not an infringer of the copyright with respect to such use.").

Under section 512(f), a copyright owner may be liable for damages if it does not make a good-faith assertion in its takedown notice that the subject material infringes on its copyright. In the words of the statute, a copyright owner "who knowingly materially represents . . . that the material or activity is infringing . . . shall be liable for damages incurred by the alleged infringer[.]" 17 U.S.C. § 512(f); *see also Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004) ("A party is liable if it 'knowingly' and 'materially' misrepresents that copyright infringement has occured.").

## II. The Digital Millennium Copyright Act's subjective good-faith standard for misrepresentation claims

Ouellette objects to Judge Lynch's conclusion that Ouellette has failed to sufficiently allege that Viacom knew that its "scanning software" was misidentifying Ouellette's videos as infringing on its copyrights. Ouellette argues that he has no way to prove at this stage of the proceedings that Viacom knew its software was flagging non-infringing videos and nevertheless issued takedown

notices. Judge Lynch's finding did not require Ouellette to prove his claims, however. It required Ouellette to allege sufficient facts that Viacom knew about the scanning software's issues when it issued its takedown notices.

The Ninth Circuit has interpreted § 512(f) as setting a high bar for plaintiffs. Whether a copyright owner issued its takedown notice in "good faith" is analyzed under a subjective standard. *Rossi v. Motion Picture Assn. of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004). Thus, defendants such as Viacom are liable only if they know that the subject material is not infringing on its copyright when they issue their takedown notices. *Id*. at 1004–1005 ("A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistakes.").

*Lenz v. Universal Music Corp.* illustrates the strict requirements a plaintiff must meet to plead a sufficient § 512(f) claim. There, the plaintiff alleged that the copyright owner, Universal, knew that her video did not infringe on its copyright but issued a takedown notice nonetheless. *Lenz*, 571 F. Supp. 2d at 1151. Universal issued a takedown notice to Youtube.com to remove the plaintiff's video of her baby dancing to a song by the artist Prince. *Id*. at 1151–1152. The plaintiff's complaint alleged that Universal was familiar with copyright actions and knew that her video was "fair use" of the song but issued a takedown notice "solely

to satisfy Prince." *Id*. at 1156. The plaintiff included information that Prince had been outspoken about his desire to "reclaim his art on the internet." *Id*. at 1152 (quotation marks omitted). On a motion to dismiss, the district court ruled that the plaintiff's claims were sufficient at the pleading stage because she had alleged facts that demonstrated that Universal had issued its takedown notice to appease Prince, instead of in good faith that her video had infringed its copyrights. *Id*. at 1156.[2]

The high standard for a § 512(f) claim reflects the reality that copyright owners face an uphill battle to protect their copyrights on the internet. As of 2010, for example, Youtube.com added one billion video clips a day "with more than 24 hours of new video uploaded to the site every minute." *Viacom Intern., Inc. v. YouTube, Inc.*, ___ F. 3d ___, 2012 WL 1130851, *3 (2d Cir. 2012). Without the subjective standard, copyright owners such as Viacom could face limitless lawsuits just by policing its copyrighted material on the internet.

Contrary to Ouellette's assertion that interrogatories are the correct means for him to discover Viacom's intent in issuing its takedown notice to Youtube.com,

---

[2] Notably, the district court also opined that it was unlikely that the plaintiff would ultimately prevail in her case because of the high bar required under the subjective-belief standard. "Although the Court has considerable doubt that Lenz will be able to prove that Universal acted with subjective bad faith required by *Rossi*, and following discovery her claims well may be appropriate for summary judgement, Lenz's allegations are sufficient at the pleading stage." *Id*.

§ 512(f) requires Ouellette to allege facts, at the pleading stage, that demonstrate that Viacom acted without a good-faith belief. The Court agrees with Judge Lynch that Ouellette's complaint fails to plead factual allegations that meet the subjective standard. Ouellette presents no facts demonstrating that Viacom actually knew that his videos were fair use but nevertheless issued the takedown notice. In fact, Ouellette fails to plead any facts establishing that his videos were fair use of Viacom's copyrighted materials. Thus, Ouellette has failed to plead a prima facie case of misrepresentation under 17 U.S.C. § 512(f), *Rossi*, and *Lenz*.

### III. Viacom's use of "scanning software"

Ouellette next objects to Judge Lynch's finding that Ouellette failed to sufficiently allege that Viacom's use of "scanning software" violates the DMCA's good-faith requirement. The essence of Oullette's objection is that Viacom's history establishes that it uses its software to abuse the takedown process, a form of "internet bullying."

The problem with Ouellette's objection, though, is that he cannot satisfy his burden under the Digital Millennium Copyright Act by alleging that Viacom has acted improperly in the past to others. Put another way, *Rossi* requires Ouellette to plead factual allegations that Viacom acted improperly in *his* case. Ouellette was required to plead facts that Viacom knew that its "scanning software" was flagging

his non-infringing videos and that Viacom issued a takedown notice nonetheless. Because the Court agrees with Judge Lynch that Ouellette has failed to allege facts to meet this required element, Ouellette has failed to state a sufficient § 512(f) claim.

## IV. Viacom's "admission" that Ouellette's videos were fair use

Ouellette also objects to Judge Lynch's finding that Ouellette did not sufficiently allege that Viacom "admitted" that Ouellette's videos were fair use of its copyrighted works. Ouellette argues that, while Viacom has not actually admitted that his videos are fair use, Viacom's actions are consistent with admitting that they are fair use—namely, (1) Viacom has not sued Ouellette for copyright infringement even though it has issued 35 takedown notices against him and (2) YouTube.com has allegedly re-posted some of Ouellette's videos without complaint from Viacom.

But these actions are not equivalent to an admission by Viacom that Ouellette's videos are fair use.[3] And as Judge Lynch correctly noted, the United

---

[3] There are, perhaps, many legitimate reasons why Viacom might have decided not to sue Ouellette and has not complained about the videos that Youtube.com has allegedly re-posted. As noted above, there are one billion videos added to Youtube.com every day. Viacom may have decided that it is simply not in the company's financial interest to sue each Youtube.com user that infringes its copyrights. And Viacom might believe that it does not have the resources to find and issue notices for every video that is posted on Youtube.com

States Supreme Court has ruled that "consistent" or "parallel" activity is insufficient to state a claim: "Inferences and implications based on conduct alone, however, are insufficient.  Allegations describing conduct that could be merely parallel to, or consistent with, conduct that would otherwise give rise to liability is not sufficient to satisfy the plausibility standard." (Doc. 60 at 11 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553–554 (2007).)  Simply put, Ouellette has failed to plead sufficient facts showing "that [he] is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

## V.     Dismissal of Ouellette's complaint

Finally, Ouellette objects to Judge Lynch's recommendation to dismiss his complaint with prejudice.  Ouellette claims that he hopes to have the money to hire a lawyer in the future to prosecute this case.  Ouellette, however, has been given ample opportunity to plead his claims under the Digital Millennium Copyright Act.  He has been on notice of the subjective good-faith standard since Judge Lynch's February 17, 2011 order.  Because Ouellette has failed to adequately plead his § 512(f) misrepresentation claim, the Court agrees with Judge Lynch that "it is not necessary to afford him yet another opportunity to amend." (Doc. 60 at 14.)

IT IS ORDERED that Judge Lynch's Findings and Recommendations (doc.

---

that infringes on its copyrights.

60) is adopted in full.

IT IS FURTHER ORDERED that Viacom International's motion for judgment on the pleadings (doc. 42) is GRANTED. Todd Ouellette's Amended Complaint (doc. 36) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter by separate document a judgment of dismissal.

IT IS FURTHER ORDERED that Ouellette's motions for summary judgment (docs. 61–2; 61–3) are DENIED.

Dated this 25th day of April 2012.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT